(No. 34310.—

OAKDALE COMMUNITY CONSOLIDATED SCHOOL DISTRICT No. 1 *et al.*, Appellants, *vs.* COUNTY BOARD OF SCHOOL TRUSTEES OF RANDOLPH COUNTY *et al.*, Appellees.

*Opinion filed September 20, 1957—Rehearing denied Nov. 19, 1957.*

DAVIS, C.J., and SCHAEFER, J., dissenting.

HOUSE, J., took no part.

HOUSE & HOUSE, of Nashville, and FARMER & MIDDLE-
TON, of Pinckneyville, for appellants.

WILLIAM A. SCHUWERK, of Chester, and KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellees.

MR. JUSTICE KLINGBIEL, delivered the opinion of the court:

On a petition signed by two thirds of the legal voters in certain described territory, the Randolph County Board of School Trustees entered an order detaching the territory from the school districts of which it had formed parts, and annexing it to the Coulterville School District No. 1 in Randolph and Perry counties. Proceedings were brought for administrative review in the circuit court of Randolph County, which affirmed the order; and on plaintiff's appeal to the Appellate Court the circuit court's decision was affirmed. We have granted leave for further appeal to this court.

The appellants are two of the districts from which the territory in question was detached. They contend the decision of the board is not supported by the evidence. In providing for boundary changes the statute directs that the board "shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted." (Ill. Rev. Stat. 1953, chap. 122, par. 4B—4.) The record shows no substantial difference in educational facilities or distances to school, although road construction interfered temporarily with the transportation of a few pupils to appellants' schools. Four of the 43 voters who signed the petition testified. In brief, they desire the change because Coulterville is their trading and banking center, and, in some cases, is the place where the witness attends church services. One of appellees'

witnesses also testified that his children had to walk a mile; that their present school has no fence around its yard. The evidence further discloses that the number of pupils per teacher is already greater at Coulterville than at either of the other districts; that the curricula are identical; and that the change would deprive one of the appellant districts of 20 percent of its assessed valuation and the other of 10 percent.

Appellees emphasize the wishes and desires of the inhabitants of the territory detached; and they invoke the rule that an administrative order is binding unless manifestly against the weight of the evidence. It may safely be concluded that the petition, which was signed by more than two thirds of the voters within the particular territory in question, expresses the choice of its inhabitants. Indeed, only one of such residents objected at the hearing But personal preference and convenience do not control, under the system in effect in this State. School boards have been given the power, within the limits of a reasonable discretion, to decide such questions for the parents. This power, however, is not an arbitrary one. Orders effecting a change of boundary must be made in conformity with the standards prescribed by the legislature and designed with an eye to the educational welfare of the children residing in all the territory to be affected. The correct rule is expressed in *Trico Community Unit School Dist. No. 176* v. *County Board of School Trustees* 8 Ill. App.2d 494, where the court observed that "although the residents of territories within the district may initiate a petition for detachment because of personal desires or convenience, much more is needed to support the board's decision to change established boundaries. The welfare of the affected districts and their pupils as a whole must control rather than the wishes of a few, and such petitions granted only where the benefit derived by the annexing

and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole."

The reason for such a rule is found in the method of education thought desirable by the people of this State. Although private schools exist, the constitution ordains that the legislature shall provide a system of "free" schools. As long as such a system prevails, individual choice in the matter of paying the price of schools is subordinated to the will of a majority within boundaries determined in the manner prescribed by statute. The General Assembly has provided a method whereby those of existing districts may be changed, and has expressed the factors to which consideration must be given in a proceeding of this kind. Although the consent of two thirds of the voters is required to initiate the proceeding, such consent is not sufficient to warrant the granting of relief. The statute contemplates such an order only if the division of funds and assets will not jeopardize the educational resources of existing districts and if the change will serve the best interests of the pupils in the entire area. School districts are not to be changed, therefore, solely by the shopping, banking or school preferences of those residing in particular segments thereof.

An examination of the facts in the record before us fails to show that the statutory standards are satisfied. Aside from the personal considerations proferred by the witnesses, there is nothing which tends to show the proposed change will effect an educational improvement in the territories as a whole. On the contrary, there will be a serious depletion in the tax resources of the appellant districts and an overcrowded condition in the appellees' schools. The result is a detriment, rather than an improvement, in the educational picture of the entire area. The record is insufficient, therefore, to support the decision of the board.

It is urged that the scope of review does not include a weighing of the testimony, and that an administrative order must be upheld if based upon evidence. The argument is not applicable here. The rule which accords a *prima facie* validity to administrative decisions does not relieve a court of the important duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact. It is unnecessary for this court to advert to the dangers inherent in a relaxation of this function. They have recently been ably pointed out in Winder, A Twentieth-Century Problem: Administrative Law in Great Britain, 43 A.B.A.J. 621 (July, 1957). Our Administrative Review Act does not require judicial recognition of an order which is against the manifest weight of the evidence, "nor does the law allow a stamp of approval to be placed on the findings of an administrative agency merely because such agency heard the witnesses and made the requisite findings." *Drezner v. Civil Service Com.* 398 Ill. 219, 231.

We conclude that the Appellate Court erred in affirming the judgment of the circuit court. The judgment of the Appellate Court is therefore reversed, and the cause is remanded to the circuit court of Randolph County with directions to set aside the order of the county board of school trustees.

*Reversed and remanded, with directions.*

Mr. JUSTICE HOUSE took no part in the consideration or decision of this case.

Mr. CHIEF JUSTICE DAVIS, dissenting:

I dissent from the court's conclusion, and its determination that "the record shows no substantial difference in the educational facilities" of the schools under consideration, and that the petitioning legal voters "desire the change because Coulterville is their trading and banking center, and in some cases, is the place where the witness attends church."

The record discloses that the Coulterville School District No. 1 operates grades 1 to 12, inclusive, is State accredited and in good standing with the North Central Accrediting Association. The school has modern facilities of water, toilets and showers, and a small gymnasium which meets regulation requirements for games. It operates a State accredited lunch room, adequately equipped and properly staffed, which serves both the grade and high school children. It has an elementary classroom teacher for each grade, two physical education teachers, one for the elementary grades and one for the high school, and an audio-visual aid department for the entire school system. The high school curricula includes home economics, industrial education, commerce, agriculture, mathematics, English, science and social studies.

The testimony of the petitioning legal voters indicates that they desired to detach from their present school districts and annex to the Coulterville district because Coulterville is closer and their children could take a more active part in school affairs; Coulterville has a modern school plant and facilities; the Oakdale school is overcrowded; the roads to Coulterville "are all weather roads and are open the year around;" Coulterville has "eight teachers in the elementary school, a teacher for every grade." One of the petitioning legal voters testified, "I signed the petition to go into the Coulterville District because I want my children to have a better education."

The ex-officio secretary of the defendant County Board of School Trustees submitted maps and a report of the financial and educational conditions of the districts involved, as well as a report of the effect of the proposed change in boundaries. This report related the following facts concerning the Swanwick Community Consolidated School District No. 203, the Oakdale Community Consolidated School District No. 1, the Gravel Hill School District No. 85, the Pinckneyville Community High School District No. 101,

and the Okawville Community High School District No. 88, the districts from which the territory was sought to be detached, as well as the Coulterville District No. 1, the district to which the territory was sought to be annexed:

| School | Assessed Valuation | Educational Tax Rate | Building Tax Rate | No. Attendance Centers | Grades | No. of Teachers | Total Enrollment | Transp. Furnished | Lunch Program | Bonded Indebtedness |
|---|---|---|---|---|---|---|---|---|---|---|
| Swanwick | $ 2,066,618 | .46 | .13 | 2 | 1- 8 incl. / 1- 6 incl. | 3 / 2 | 143 | Yes | No | None |
| Oakdale | $ 2,731,010 | .50 | .15 | 1 | 1- 8 incl. | 3 | 66 res. / 11 tuition | Yes | No | None |
| Gravel Hill | $ 199,590 | .50 | .15 | 1 | 1- 8 incl. | 1 | 13 | No | No | None |
| Pinckneyville | $18,707,779 | .692 | .068 | 1 | 9-12 incl. | 23 | 426 | Yes | Yes | None |
| Okawville | $13,597,029 | .45 | .02 | 1 | 9-12 incl. | 10 | 164 res. / 2 tuition | Yes | Yes | None |
| Coulterville | $ 3,640,460 | 1.04 | .16 | 2 / 1 | 1- 8 incl. / 9-12 incl. | 9 (one teacher for each grade) / 7 | 268 / 96 | Yes | Yes | $56,900 |

The record further recites that there are 55 legal voters, 18 elementary school pupils and 9 high school pupils residing in the territory in question, and that 43 of the legal voters signed the petition.

The defendant County Board of School Trustees, "having heard evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction; having considered any possible divisions of funds and assets which will result from the change in boundaries; having considered the best interests of the schools of the area and the educational welfare of the pupils; and being fully advised in the premises" found that "it would be to the best interests of the territory that the prayer of said petition be granted," and ordered the detachment and annexation of the territory. The circuit court of Randolph County, upon administrative review of the proceedings, affirmed the order of the County Board of

School Trustees, and the Appellate Court, upon appeal, affirmed the decision of the circuit court.

I concur with the opinion of the Appellate Court (12 Ill. App.2d 260) which states at page 265 that "Under the school law the School Trustees were empowered to change the boundaries of the District to suit the wishes and convenience of the majority of the inhabitants of the territory sought to be annexed to the Coulterville District. (*School Dist. No. 79* v. *County Board of School Trustees,* 4 Ill.2d 533.)" However, I would add that the power of the County Board of School Trustees must be exercised pursuant to the provisions of paragraph 4B—4 of the School Code. Ill. Rev. Stat. 1955, chap. 122, par. 4B—4.

The County Board of School Trustees saw the witnesses, heard their testimony, and gave consideration to the report outlined in the above table. It noted the niggardly tax rates of the elementary school districts from which detachment was sought; rates which accounted for the fact that these respective elementary school districts operated either grades 1 to 8 inclusive in a single room with one teacher, or two or more grades per room with one teacher for such combined grades. It considered the assessed valuation of the taxable property, the pupil enrollment, the size, and facilities of the respective schools. It heard the protests by the petitioners against outmoded educational practices, which caused the petitioners to seek to detach from such districts and annex to a district offering more acceptable educational procedures, with their attendant advantages, and a higher tax rate to defray the cost of such additional opportunities.

Decisions such as this depend upon complicated local factors including the financial, educational and instructional aspects of school programs, as well as problems of transportation and the physical welfare of children. The latter consideration is related to the presence or absence of physical education and health programs, modern facilities, and

proper nutrition through a school lunch program. The County Board of School Trustees, local in nature, had a subtle appreciation of these and a myriad of other circumstances that do not yield to understanding from the record on review. This court lacks the judicial antenna for comparably effective analysis of local situations. The interpretation of evidence by this court under existing circumstances may well have been made *in vacuo*. Such reasons gave rise to legislative enactment and judicial precedent designed to prevent the result reached in the court's opinion.

The judgment of the County Board of School Trustees, which was affirmed by the circuit and Appellate courts, was not against the manifest weight of the evidence. Yet this court, upon a cold record and an inadequate statement of facts, has substituted its judgment for that of the County Board, presumably upon a different factual conclusion than that reached by the County Board or the intermediate reviewing courts.

After reviewing the entire record, I conclude that there is ample evidence to sustain the order of the County Board of School Trustees. The Administrative Review Act (Ill. Rev. Stat. 1955, chap. 110, par. 274,) provides: "The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct." The findings of the County Board of School Trustees were not against the manifest weight of the evidence, were substantiated by the record on review and should not be disturbed by this court. (*Buchholz* v. *Cummins,* 6 Ill.2d 283; *Logan* v. *Civil Service Commission,* 3 Ill.2d 81.) Its conclusion was in conformity with the standards prescribed in section 4B—4 of the School Code. I would affirm the Appellate Court.

Mr. JUSTICE SCHAEFER concurs in the foregoing dissenting opinion.