(No. 54083.—

BOARD OF EDUCATION OF GOLF SCHOOL DIS-
TRICT NO. 67, Appellant, v. REGIONAL BOARD OF
SCHOOL TRUSTEES OF COOK COUNTY *et al.*,
Appellees.

*Opinion filed February 2, 1982.—Rehearing
denied March 25, 1982.*

SIMON, J., took no part.

David P. Kula and John F. Canna, of Anthony Scariano & Associates, P.C., of Chicago Heights, for appellant.

Russell M. Pelton, Pat Chapin, and Craig A. Varga, of Peterson, Ross, Schloerb & Seidel, of Chicago, for appellees.

JUSTICE WARD delivered the opinion of the court:

On December 29, 1978, a petition was filed by residents of Golf School District No. 67 with the Cook County Regional Board of School Trustees (Regional

Board) to detach the village of Golf, the Golf Acres subdivision of the village of Glenview, and an area of commercial property from Golf School District No. 67 (District 67) and to attach the property to Glenview Community Consolidated School District No. 34 (District 34). The purpose was to permit children of the proposed detachment area to attend school in Glenview. The petition was signed by more than two-thirds of the registered voters in the detachment area, as required by statute (Ill. Rev. Stat. 1977, ch. 122, par. 7–1). On August 27, 1979, the Regional Board issued its findings of fact and granted the petition. On February 15, 1980, the circuit court of Cook County, on administrative review, affirmed the board's decision granting the petition. It ordered that children residing in the detachment area in District 67 would have an election to attend District 34 schools pending appeal from the court's order and that District 67 would be required to pay nonresident tuition for the detachment area students who chose to attend school in the annexing district. Upon appeal by District 67, the appellate court affirmed the portions of the circuit court's order that granted the petition and ordered District 67 to pay nonresident tuition to District 34, but reversed that portion which permitted detachment-area children pending appeal to attend school in District 34. (88 Ill. App. 3d 121.) We granted District 67 leave to appeal. 73 Ill. 2d R. 315.

Twenty-four witnesses appeared before the Regional Board, and 97 exhibits were introduced into evidence. The evidence is set out in detail in the appellate court's opinion (88 Ill. App. 3d 121, 123-27), and it will not be necessary to restate the evidence here. Based on the evidence, the Regional Board made findings, *inter alia,* that in considering the petition for detachment one must use a "whole child" concept in evaluating the effect on the children in the area proposed for detachment. One must consider whether children's opportunities for participation in

library, park district and other after-school programs, as well as school-time programs, will be enlarged; that consideration of the "whole child" concept in this case warrants granting the petition since the educational welfare of the detachment-area children would be improved; that the detachment area is part of an identifiable "community of interest" with the village of Glenview; that by consolidating its programs after detachment and by exercising its unutilized taxing power, District 67 would be able to maintain or improve the present quality of its educational programs and that detachment would have no significant adverse economic impact; that the safety of detachment-area children in traveling between school and their homes would be improved; that both districts would continue to be able to meet the standards of recognition prescribed by statute; and that the best interests of the schools in the area and the educational welfare of the public required that the petition be approved.

Here, as in the appellate court, District 67 argues that the Regional Board erred in considering the "whole child" and "community of interest" factors and contends that the findings of the Regional Board are against the manifest weight of the evidence.

It is, of course, the role of a regional board and not of the courts to make findings of fact, and its determinations and decisions will not be set aside on administrative review unless they are shown to be contrary to the manifest weight of the evidence. (*School District No. 79 v. County Board of School Trustees* (1954), 4 Ill. 2d 533.) The findings of a regional board on questions of fact are *prima facie* true and correct. (*Zejmowicz v. County Board of School Trustees* (1971), 133 Ill. App. 2d 735.) This court observed in *School Directors of School District No. 82 v. Wolever* (1962), 26 Ill. 2d 264, 268 that "[i]t must remain for local boards to weigh the relevant factors to determine the action best serving our entire education system. When

the entire record indicates *** that the board has considered the applicable statutory standards and is supported in its conclusion by substantial evidence, its determination must be affirmed." It is not for a court to reweigh evidence or substitute its judgment for that of the Regional Board.

The standards to be considered by a regional board in determining whether to permit a transfer of land from one school district to another are set out in section 7–6 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 7–6). It provides:

> "The *** board of school trustees shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted. ***"

Too, the benefit to the annexing district and the detachment area must clearly outweigh the detriment resulting to the detaching district and the surrounding community as a whole. *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190.

The "whole child" factor and the closely related "community of interest" factor are not improper considerations in determining the wisdom or unwisdom of shifting the boundaries of school districts. The former factor recognizes that extracurricular participation in social, religious and even commercial activities is important in a child's development as a beneficial supplement to the child's academic involvement. (*School District No. 106 v. County Board of School Trustees* (1964), 48 Ill. App. 2d 158.) Too, in annexation-application hearings it is proper to

ascertain whether the petitioning area is identified with the school district and the community to which annexation is requested. If a child attends school in his natural community it enhances not only his educational opportunity but encourages his participation in social and other extracurricular activities that figure importantly in the "whole child" idea. The court in *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 509-10, stated that more important than benefits of increased safety and savings in transportation costs and time "is the fact that an identification with a school district in a child's natural community center will inevitably result in increased participation in school activities by the child and his parents. Such increased participation cannot but result in an improvement in the educational picture of the entire area." The Review Board properly gave consideration to the whole-child and the community-of-interest factors in determining whether annexation should be allowed.

An examination of the record and the evidence which is set out in detail in the opinion of the appellate court show that the Regional Board properly considered the statutory standards under section 7–6 of the School Code and that the determination of the Board that annexation should be granted was not contrary to the manifest weight of the evidence. We judge that the record shows that the benefit which will be derived by the annexing district and the detachment area clearly outweighs the resulting detriment to the detaching district. See *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190.

District 67 argues, too, that the Regional Board's action here compels the closing of a school, staff cuts, and program consolidations in District 67. It contends that such compulsion constitutes a usurpation of nondelegable discretionary powers of local school boards. While it is true that the responsibility for the control and supervision

of school buildings, the hiring and firing of staff members, and the consolidation of school programs is vested solely in local school boards (Ill. Rev. Stat. 1977, ch. 122, pars. 10—20 through 10—22), it seems clear that the Regional Board did not usurp the function of the local school board. The Regional Board, in determining what effect redistricting would have on District 67, simply took into account the decision made by District 67 to close one of its schools and to reduce staff size. District 67 argues that its earlier announced decision to close one of its schools and reduce staff size was not to take place at once but at a later scheduled date. We do not, however, judge that the mere possibility that District 67 might seek to reverse its prior decision to close a school and reduce the size of its staff makes those decisions factors which the Regional Board was not permitted to consider in deciding the annexation application. The board's assumption that District 67's decision, made, one may assume, for good cause, would be carried out was not improper. The consideration by the Regional Board of a local school board's announced decision and plans was not a usurpation of the local board's function.

In *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, which has been referred to above, the statutory standards for the granting of a detachment petition were interpreted to require that "the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole." (12 Ill. 2d 190, 193-94.) District 67 acknowledges that the record contains evidence that residents of the detachment area will benefit from redistricting, but it argues that the Regional Board was required to find also a benefit to District 34. District 67 contends that the board did not properly apply the standard described in *Oakdale* since it did not make a

separate finding of benefit to District 34. District 67 says that *Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 553-54, in which the court stated that "[M] ere proof of no detriment to the losing district has been said to be insufficient to support a petition in the absence of an evident benefit," supports its position.

Looking to the context of the court's statement, one finds that in *Eble* the absence of a benefit to the annexing district was determinative because the only benefit that would have resulted from the proposed redistricting was the satisfaction of the personal preference of the petitioning parents and their child as to the school to be attended. Although the wishes or convenience of petitioning parents and their children is to be considered, more than the personal preference of petitioners must be shown to warrant a change in district boundaries. (*Board of Education of Lovington Community Unit School District No. 303 v. Maycroft* (1980), 86 Ill. App. 3d 1130.) The situation here is not as in *Eble*. The record shows that both of the school districts and the residents would receive benefits other than the mere convenience and personal preference of the petitioners. Students from the detachment area would benefit by improved safety conditions in traveling to and from school and by enhanced opportunities to participate in school, extracurricular, and community activities; District 67 and its students would benefit by being relieved of the overcrowding caused by the closing of one of its schools; District 34 would benefit from improved efficiency through the use of idle facilities and from the obvious benefit of an increase in tax revenues and added assessed valuation.

Contrary to the contention of District 67, the requirement described in *Oakdale* does not mandate a separate finding of benefit to District 34 by the Review Board independent of the benefit to the detachment area. Instead, it is the *overall* benefit to the annexing district and

the detachment area considered *together* that "clearly outweighs the detriment resulting to the losing district and the surrounding community *as a whole*." (Emphasis added.) 12 Ill. 2d 190, 194.

District 67 argues that it will lose substantial amounts of tax revenue and assessed valuation if there is a detachment and asserts that the benefit to the detachment area cannot outweigh the financial detriment it will suffer.

It is obvious that with every detachment and annexation there is a resulting loss of assessed valuation and tax revenue to the district losing a portion of its territory. As the appellate court observed, loss is inevitable. This circumstance alone will not prevent redistricting if it appears that the maximum tax rate is not being levied by the detaching district. (*Bowman v. County Board of School Trustees* (1974), 16 Ill. App. 3d 1082; *Calvert v. Board of Education* (1963), 41 Ill. App. 2d 389.) The record indicates that District 67 is not levying its maximum authorized rate in several of its funds. Whether a detaching district will remain financially healthy and able to meet the statutory standards for recognition is more important than the size of the loss of tax revenues and assessed valuation the district must bear. (*Cf. Board of Education v. Regional Board of School Trustees* (1980), 82 Ill. App. 3d 1067.) The Regional Board received expert testimony that detachment would have no significant adverse effect on District 67 and that its ability to satisfy the statutory standards for recognition would not be jeopardized. The appellate court considered that the financial detriment to District 67 was insignificant.

In summary, we are in agreement with the appellate court's conclusion that "the Board could have properly found that it is in the best interest of the schools in the area and the educational welfare of the pupils that the requested change in boundaries be granted" (88 Ill. App. 3d 121, 131).

The appellate court correctly held that the trial court's order permitting detachment-area children to attend school in District 34 pending appeal, which was entered subsequent to the Regional Board's order granting the detachment, violated section 7—7 of the School Code. The section in part provides that the "commencement of any action for review shall operate as a supersedeas, and no further proceedings shall be had until final disposition of such review." (Ill. Rev. Stat. 1977, ch. 122, par. 7—7.) The obvious design of the section is to prevent confusion among students, school bodies and others affected and to avoid unnecessary complications in the expenditure of public funds. Although the appellate court reversed that part of the trial court's order allowing the students to elect to attend school in District 34, it concluded that District 67 should pay nonresident tuition for students who elected to attend District 34 schools during the year the order was in effect. We judge that the appellate court's affirmation of the tuition payment order was proper.

The appellate court's reversal of the trial court's order permitting detachment-area students to attend District 34 schools does not change the fact that District 34 absorbed the expense of educating those students who elected to transfer. (The record is not clear as to the number of detachment-area students who chose to attend District 34 schools during the 1979-80 school year.) District 34, in opening its doors to those students, was acting in accordance with the court's order, and it would be manifestly inequitable if it were not compensated for the added expenses incurred. The legislature authorized the levying of taxes by boards of education in order to provide for the expense of educating children residing within their districts. When this expense is actually borne by another district, it is appropriate for the relieved district to reimburse the other district. *Cf.* Ill. Rev. Stat. 1977, ch. 122, par. 10—22.22.

If District 67 were not required to pay nonresident tuition, it might reap a windfall benefit since it had levied taxes to cover the educational cost of detachment-area students. Expert testimony showed that District 67 received at least $208,000 in tax revenues from the detachment area for the school year following the trial court's order and that District 34's costs were less than $2,000 per detachment-area student. Thus, even if all 55 detachment-area students had elected to attend District 34 schools for the year in question, after reimbursing District 34, District 67 would be left with detachment-area tax revenues in the neighborhood of $100,000 to cover its fixed expenses.

For the reasons stated, the judgment of the appellate court is affirmed. The cause is remanded to the circuit court of Cook County for a determination of the amount of nonresident tuition to be paid to District 34.

*Affirmed and remanded,*
*with directions.*

JUSTICE SIMON took no part in the consideration or decision of this case.