PAUL L. CARVER *et al.*, Plaintiffs-Appellants, v. BOND/FAYETTE/ EFFINGHAM REGIONAL BOARD OF SCHOOL TRUSTEES *et al.*, Defendants-Appellees.

Fifth District   No. 5—89—0091

Opinion filed August 21, 1990.—Rehearing denied September 26, 1990.

Patrick J. Hitpas and John Hudspeth, both of Patrick J. Hitpas, P.C., of Carlyle, for appellants.

Don Sheafor, State's Attorney, of Vandalia, for appellee Bond/Fayette/ Effingham Regional Board of School Trustees.

Dennis Middendorff, State's Attorney, of Carlyle, for appellee Clinton/ Washington Regional Board of School Trustees.

David L. Miller, of Corbell & MIller, of Vandalia, for appellee Mulberry Grove Community Unit School District No. 1.

JUSTICE CHAPMAN delivered the opinion of the court:

A joint petition for detachment and annexation was filed on behalf of the Carvers and the Barths (appellants), who sought detachment of certain real property from the Mulberry Grove Community Unit School District No. 1 (Mulberry School District), and annexation to the Carlyle Community Unit School District No. 1 (Carlyle School District). After an administrative hearing conducted before the Regional Board of School Trustees of Bond, Fayette and Effingham Counties (B/F/E Board), and before the Regional Board of School Trustees of Clinton and Washington Counties (C/W Board), the two boards took separate votes on the issue presented by the petition. The B/F/E Board voted four votes against and three votes in favor of detachment and annexation. The C/W Board voted four votes in favor and zero votes against the petition. The regional superintendent of schools of Bond, Fayette and Effingham Counties thereupon entered an order denying the prayer of the petition. Appellants filed a complaint for judicial review in the circuit court. The circuit court denied the relief sought. It is from the circuit court's decision that the Carvers and the Barths appeal.

The appellants first contend that it was error for the B/F/E Board and the C/W Board to vote separately on the petition and to render separate orders. Appellants argue that a reversal of the cause is mandated because the requirements of the School Code were not followed.

Appellants refer in particular to sections 7—2 and 7—6 of the School Code. (Ill. Rev. Stat. 1989, ch. 122, pars. 7—2, 7—6.) Appellants point out that the statutory language in sections 7—2 and 7—6, referring to joint hearings, was recently added with the enactment of Public Act 85—260. (Pub. Act 85—260, eff. Jan. 1, 1988.) Pertinent provisions of section 7—2 of the School Code as they read prior and subsequent to the enactment of Public Act 85—260 are as follows:

> "Boundaries of existing school districts lying within two or more counties may be changed by detachment, annexation, division, dissolution or any combination thereof by the concurrent action of, taken following a joint hearing before, the regional boards board of school trustees of each region affected. *** (a) the region in which the regional superintendent of schools has supervision over the district from which the petition seeks to have territory detached *** and (b) the regional board of school trustees of the region in which the regional superintendent of schools has supervision over the district to which the territory is proposed to be annexed."

(Additions in text are indicated by underline; deletions by

~~strikeouts.~~) 1987 Ill. Laws 1550.

Prior to changes implemented by Public Act 85—260, section 7—6 also did not include any reference to a joint hearing by the regional boards of school trustees. The pertinent changes implemented by the act with regard to section 7—6 are:

> "<u>Within 10 days after the conclusion of a joint hearing required under the provisions of Section 7—2, each regional board of school trustees shall meet together and render a decision with regard to the joint hearing on the petition. If the regional boards of school trustees fail to enter a joint order either granting or denying the petition, the regional superintendent of schools for the educational service region in which the joint hearing is held shall enter an order denying the petition</u> ***.
>
> ***
>
> ~~When more than one regional board of school trustees must act, the one hearing the petition shall after entering its final order send forthwith a certified copy of the transcript of the hearing and rehearing, if any, to the other regional board who shall within 30 days conduct a hearing as provided in this section on the transcript and either grant or deny the request in the petition.~~" (Additions in text are indicated by <u>underline</u>; deletions by ~~strikeouts~~.) 1987 Ill. Laws 1552-53.

■ The primary rule of statutory construction is that the court must ascertain and give effect to the intent of the legislature. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475, 433 N.E.2d 674, 677.) This is to be done primarily from a consideration of the statutory language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139, 361 N.E.2d 585, 587.

Appellants argue that the current statutes include numerous references to "joint hearing" and "decision," as opposed to the statutory language prior to Public Act 85—260, regional boards of school trustees meeting jointly must vote as a single deliberative body and render a single decision on a petition.

■ An examination of the language used in the statutes reveals that the legislature did not intend the regional boards to vote as one body or to render a single decision based on a cumulative tally of their votes. The substantive change implemented in the current version of section 7—2 is the requirement that the regional school boards

hear and consider the evidence at a *joint hearing*, instead of the former practice of one board hearing the evidence first hand, and then forwarding a transcript of the proceedings to the other board for review. We note that both the current version of section 7—2 and its predecessor provide that the *action* to be taken by the regional boards is *concurrent*. The words "concurrent action" do not mean or imply joint action, but the independent action of each board, acting separately, each agreeing to such change. (Compare *People ex rel. Chamberlin v. Trustees of Schools of Township No. 1* (1943), 319 Ill. App. 370, 378, 49 N.E.2d 666, 671 (interpreting similar statutory language of Ill. Rev. Stat. 1941, ch. 122, par. 47).) Had the legislature intended the boards to act jointly, both during their hearings and their voting, it is illogical that the statutes would have referred only to *joint hearings* while referring to the board's *actions* as *concurrent* in section 7—2. We cannot hold to the contrary because we are not authorized to declare that the legislature did not mean what the plain language of the statute imports. *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350, 167 N.E.2d 169, 173-74.

■ Recognizing that statutory provisions relating to the same subject matter should be construed harmoniously (*Howard v. Board of Education of Freeport School District No. 145* (1987), 160 Ill. App. 3d 309, 312, 513 N.E.2d 545, 546), we note that the language of section 7—6 lends support for this interpretation. While the statute reads "each regional board of school trustees shall meet together and render a decision," the implication that "a decision" contemplates a cumulative tally of the votes is weakened by the last sentence of section 7—6. Had the legislature intended the regional boards to vote as one body with the votes cumulatively tabulated, this sentence would be meaningless. We will not assume that the legislature engaged in a meaningless act. *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 388-89, 415 N.E.2d 1034, 1041, *cert. denied* (1981), 451 U.S. 921, 68 L. Ed. 2d 312, 101 S. Ct. 2000.

Based on the foregoing, we find that the regional school boards did not err in voting separately and rendering separate decisions on the petition.

Appellants next argue that the administrative and judicial decisions denying the petition for detachment and annexation are contrary to the manifest weight of the evidence.

■■ ■ Section 7—2.6 outlines the factors to be considered by the regional boards of school trustees in cases of a joint hearing on a petition for detachment and annexation:

"The Hearing Board (a) shall hear evidence as to the school

needs and conditions of the territory in the area within and adjacent thereto, and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, (b) shall take into consideration the division of funds and assets which will result from any change of boundaries, and the will of the people of the area affected, and (c) shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils should such change in boundaries be granted." (Ill. Rev. Stat. 1989, ch. 122, par. 7—2.6.)

In determining whether the change in boundaries will be in the best interest of the educational welfare of the pupils, the hearing boards must consider:

"(1) the differences between the districts' facilities; (2) the effect detachment will have on either district's ability to meet statutory standards of recognition; (3) the effects on tax revenues; (4) the relative distances of the districts from students' homes; (5) identification of the detaching area with the annexing district; (6) the likelihood of child and parent participation in school activities, and (7) the convenience and personal desires of parents and children." (*Phillips v. Special Hearing Board* (1986), 154 Ill. App. 3d 799, 805, 504 N.E.2d 1251, 1255.)

With these factors in mind, we will examine the report of proceedings to determine whether the decision below was contrary to the manifest weight of the evidence.

The boundary line between the Mulberry School District and the Carlyle School District lies immediately south of an 80-acre tract owned and occupied by the Barths. The Carvers reside on a tract approximately one acre in size, lying immediately north of the Barth property. Both parcels of property are in the Mulberry School District.

At the hearing on the petition for detachment and annexation, appellants testified that they were the only residents and registered voters of the area sought to be annexed. Both the Carvers and the Barths live approximately three miles from Keyesport, and identify with the City of Keyesport, which is in the Carlyle School District. The Carvers attend church in Keyesport, have relatives in that area, and are active in the Keyesport community.

Both the Carvers and the Barths testified that they each have one child of school age. Christine Carver testified that their son Nicolas, age six, had just completed kindergarten. He had been in a daycare

preschool setting for 1½ years before he started kindergarten and did very well in that program. She testified, however, that when he began kindergarten he started to exhibit aggression and would often complain about not wanting to attend school. Nicolas would often cry, fuss, wet his bed, and was generally uncooperative to the point where Mrs. Carver "did not know what to do with him." Mrs. Carver testified that at Mulberry grade school Nicolas had difficulty learning some of the letters of the alphabet, but that he did not seem to have as much trouble learning his numbers. When asked on cross-examination whether Mrs. Carver questioned Nicolas' teacher's disciplinary tactics and her evaluation of his knowledge of letters and numbers, Mrs. Carver stated, "My question was that a certain amount of wiggling is to be expected in most five year olds. *** There were some letters that he had demonstrated both to his father and I [sic] that he did know at home that were reported as not being learned *** throughout the school year."

Mrs. Carver consulted with a doctor, and with the school principal at both Mulberry grade school and the Carlyle grade school, regarding her son's behavior and academic progress. She testified that Nicolas' doctor determined that his bed-wetting was not due to any physical problem. She stated that the doctor agreed that it might be necessary to remove Nicolas from the Mulberry kindergarten class. Mrs. Carver testified that when she consulted with the Mulberry grade school principal in January, it was suggested to her that it might be necessary to test Nicolas for the special education program.

After consulting with the Carlyle school principal, the Carvers enrolled Nicolas at Carlyle in February of his kindergarten year. At Carlyle he was placed in the "at risk" program at the recommendation of the school principal. The "at risk" program, which Mulberry grade school does not have, provides a classroom setting for grades kindergarten through third, where there are in full-time attendance a teacher, a remedial teacher, and a teacher's aid. The Mulberry grade school principal described the "at risk" program as one providing an ideal classroom.

Mr. and Mrs. Carver testified that after their son enrolled at Carlyle, they noticed a marked difference in his attitude and behavior. He has calmed down, has a much more pleasant personality, and has for the most part stopped wetting his bed. Although the Carvers expressed no ill will toward the Mulberry School District, they believe it in their son's best interest that he attend school in the Carlyle School District.

James and Maxine Barth each testified as to why they desired to

have their property annexed into the Carlyle School District. Their daughter Barbara had done reasonably well her first eight years of school. Mr. Barth testified that through grade school Barbara earned A's and B's. In junior high school Barbara earned B's and C's. When she reached her sophomore year, however, she barely passed, earning D's and F's. During her sophomore year Mr. Barth was called to conferences with the school principal regarding his daughter's truancy and disciplinary problems. Mr. Barth testified that although solutions to Barbara's problems were suggested at Mulberry High School, nothing worked. He testified, "She hated the school. She hated to go. She was 16. She could have quit; but, I'm not going to let her."

The testimony of Mr. Barth also revealed that Barbara had a drug dependency problem. The Barths testified that Barbara ran with a circle of friends at Mulberry that contributed to many of her problems. Bill Donaldson, the Mulberry Junior-Senior High School principal, confirmed this. He testified that he believed Barbara's problems stemmed from "the four individuals that she was running with" at school. Donaldson testified that whenever Barbara was truant or was cited for other disciplinary infractions, he would telephone either Mr. or Mrs. Barth. Donaldson stated that although he perceived that Barbara had a problem with either drugs or alcohol, to his knowledge she "has never *** been involved in our school district as far as discipline is concerned as it relates to drug[s] or alcohol."

James Barth testified that when Barbara attended the Mulberry school he never received a telephone call on the same day Barbara was truant or violated a disciplinary rule, but that he did receive letters from the school a few days later. When Barbara enrolled at Carlyle High School her truancy problems stopped. Mr. Barth recalled that Barbara was truant one afternoon, but within the hour Mrs. Barth received a telephone call from the school. The Barths were aware of no other disciplinary problems once Barbara enrolled at Carlyle High school. Her grades improved and her attitude toward school also improved.

The Barths testified that they believed the Carlyle School District to have a much broader curriculum than Mulberry School District because Barbara was amazed at the alternatives she had to choose from when she enrolled at Carlyle. Mrs. Barth testified, however, that they are not critical of the educational environment at Mulberry. She stated that Barbara's problems were "her own doing. It wasn't the teachers or anything at the school."

Neither the Barths nor the Carvers expressed any dissatisfaction with the bus service in the Mulberry School District. Furthermore, an-

nexing into the Carlyle School District would not appear to pose a burden on the district, as Robert Evans, superintendent of Carlyle Unit 1 testified that the Carlyle school buses currently run up to the Barth property.

At the time of the hearing, Nicolas Carver and Barbara Barth were attending school in the Carlyle School District. The Carvers and the Barths were paying tuition to enable their children to attend the Carlyle schools. Both the Carvers and the Barths testified that they would continue to pay tuition if necessary. Robert Evans testified that as long as they pay tuition and the students are residents of the district, the students would be calculated into the formula to determine the amount of State aid the Carlyle School District would receive. Paul Seymour, superintendent of the Mulberry School District, testified that the loss in State aid for the coming school year should the two children attend Carlyle schools would amount to approximately $3,500. Although the detachment would not affect the district's ability to meet statutory standards of recognition, he stated that detachment would result in a financial loss to the district of somewhere between $1,300 and $1,500 in property tax revenues.

■ Our supreme court has ruled that much more is needed to support a change in established boundaries than the personal desires or convenience of the petitioners. The welfare of the affected districts and their students as a whole must control rather than the wishes of a few, and petitions should be granted only where the benefit derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole. *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 193-94, 145 N.E.2d 736, 737; *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 397, 433 N.E.2d 240, 243.

■ The record supports the conclusion that the only significant gain which would result were the petition allowed would be to the petitioners. As it is the welfare of the students and the districts as a whole which must govern in the consideration of an annexation petition (*Oakdale*, 12 Ill. 2d at 193, 145 N.E.2d at 737), we conclude that the decision of the regional superintendent and the circuit court was not contrary to the manifest weight of the evidence.

Finally, appellants argue that the order of the regional superintendent should be reversed for failure of the B/F/E Board to examine or review the exhibits submitted by the petitioners.

■ Section 7—6 of the School Code (Ill. Rev. Stat. 1989, ch. 122,

par. 7—6) provides that the regional boards of school trustees "shall base their decision upon the transcript, maps and information and any presentation of counsel." The record reflects that an advance written report of the financial and educational conditions of the school districts and the probable effects of the proposed change was submitted to the school boards, as well as maps showing the districts involved and the area described in the petition. The exhibits submitted by appellants at the hearing included grade reports of the children, bus route schedules for the Carlyle School District, a Carlyle High School course catalog, and appellants' 1987 real estate tax bills. While there is nothing in the record to indicate that either of the regional boards received or discussed the appellants' exhibits prior to taking their vote, the report of proceedings demonstrates that the substance of these exhibits was presented to the board. (See *Board of Education of Pearl City Community Unit School District No. 200 v. Regional Board of School Trustees* (1981), 98 Ill. App. 3d 599, 603, 424 N.E.2d 808, 811-12; *Savanna Community High School District No. 200 v. County Board of School Trustees* (1966), 73 Ill. App. 2d 202, 205, 218 N.E.2d 811, 812.) We note that although there is no indication that either regional board examined appellants' exhibits, the C/W Board voted in favor of detachment. We find that no showing of prejudice has been made by the appellants and that there was substantial compliance with the requirements of section 7—6.

In light of the foregoing, we affirm the judgment of the Circuit Court of Bond County.

Affirmed.

WELCH, J., concurs.

JUSTICE RARICK, dissenting:

Because I disagree with my colleagues' interpretation of section 7—2 of the School Code, I respectfully dissent. The majority reads section 7—2 to require a joint hearing by both boards, but separate action by each board. They find support for this position in section 7—6. While acknowledging that the phrase "each regional board of school trustees shall meet together and render a decision" implies a cumulative tally of votes, the majority maintains that the second sentence of section 7—6 weakens such interpretation. The second sentence of section 7—6 states that "[i]f the regional *boards* of school trustees fail to enter *a joint order* either granting or denying the petition, the regional superintendent of schools for the educational dis-

trict service region in which the joint hearing is held shall enter an order denying the petition." (Emphasis added.) (1987 Ill. Laws 1552.) Far from supporting the majority's opinion, section 7—6, I believe, clearly demonstrates the legislature's intent that the regional boards involved meet and vote as a single body. Furthermore, given that the school trustees are to hear the petition jointly, logic dictates that where a majority of those trustees hearing the petition are in favor of it, the petition should be approved. For this reason, I dissent.