(No. 71022.—)

PAUL L. CARVER *et al.*, Appellants, v. BOND/FAY-
ETTE/EFFINGHAM REGIONAL BOARD OF
SCHOOL TRUSTEES *et al.*, Appellees.

*Opinion filed January 30, 1992.*

Patrick J. Hitpas and John Hudspeth, of Carlyle, for appellants.

Don Sheafor, State's Attorney, of Vandalia, for appellee Regional Board of School Trustees for Bond, Fayette and Effingham Counties.

David L. Miller, of Corbell & Miller, Ltd., of Vandalia, and Everett E. Nicholas, Jr., and Merry C. Rhoades, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee Mulberry Grove Community Unit School District No. 1.

CHIEF JUSTICE MILLER delivered the opinion of the court:

In July 1988, petitioners Paul and Christine Carver, and James and Maxine Barth, sought to detach their property from Mulberry Grove Community Unit School District No. 1 and to annex it to Carlyle Community Unit School District No. 1. Pursuant to the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 7—2 *et seq.*), they filed a joint petition with the Regional Board of School Trustees of Bond, Fayette and Effingham Counties (the Mulberry Board) and with the Regional Board of School Trustees for Clinton and Washington Counties (the Carlyle Board). Following a hearing conducted before both groups of regional trustees, members of the Mulberry Board voted 4-3 against the proposed detachment and annexation. The Carlyle Board separately voted 4-0 in favor of such action.

Within 30 days of the joint hearing, the regional school superintendent of Bond, Fayette and Effingham Counties entered an order denying the request for a boundary change. Petitioners then sought judicial review in the circuit court of Bond County. The trial judge upheld the administrative decision. The appellate court af-

firmed, with one justice dissenting. (203 Ill. App. 3d 799.) We granted the petitioners' appeal under Supreme Court Rule 315 (134 Ill. 2d R. 315), to address two issues:

(1) whether the School Code requires regional boards of trustees to vote as a single body on petitions for detachment and annexation; and

(2) whether the regional superintendent's order denying the petition was against the manifest weight of the evidence presented at the joint hearing.

Petitioners first claim that the regional boards failed to follow proper statutory procedures. They argue that sections 7—2 and 7—6 of the School Code, when read together, require the regional boards of all affected school districts to vote as a single body on petitions for detachment and annexation. Petitioners thus maintain that the regional superintendent erred when he entered a unilateral order denying their petition because the cumulative vote of the members of both boards was 7-4 in favor of the proposed boundary change.

The relevant portions of sections 7—2 and 7—6 of the School Code are as follows:

"Boundaries of existing school districts lying within two or more counties may be changed by detachment, annexation, division, dissolution or any combination thereof by the concurrent action of, taken following a joint hearing before, the regional boards of school trustees of each region affected." Ill. Rev. Stat. 1989, ch. 122, par. 7—2.

"Within 10 days after the conclusion of a joint hearing required under the provisions of Section 7—2, each regional board of school trustees shall meet together and render a decision with regard to the joint hearing on the petition. If the regional boards of school trustees fail to enter a joint order either granting or denying the petition, the regional superintendent of schools for the educational service region in which the joint hearing is held

shall enter an order denying the petition ***." Ill. Rev. Stat. 1989, ch. 122, par. 7—6.

The phrase "concurrent action" is not defined in the School Code. In *Rayfield v. People ex rel. McElvain* (1893), 144 Ill. 332, however, this court held that statutory language requiring the formation of a new school district "by the concurrent action of the several boards of trustees" did not mean by the joint action of the boards. (*Rayfield*, 144 Ill. at 335-36 (construing section 51 of the revised School Law of 1889); see also *People ex rel. Scott v. Nelson* (1911), 252 Ill. 514, 517 (recognizing propriety of separate votes by two township boards under another predecessor school district statute requiring concurrent action).) Thus, concurrent action means "the independent action of each board separately, each agreeing to such change [in school district boundaries]." (*Heppe v. Mooberry* (1932), 350 Ill. 641, 647.) The principle that "concurrent action" does not mean "joint action" has long been followed by our appellate court. See, *e.g., Konald v. Board of Education of Community Unit School District 220* (1983), 114 Ill. App. 3d 512, 520; *Harris v. Regional Board of School Trustees* (1980), 82 Ill. App. 3d 710, 712; *In re Matter of the Detachment of Territory from Bloom Township High School District Number 206* (1965), 59 Ill. App. 2d 415, 430; *People ex rel. Chamberlin v. Trustees of Schools of Township No. 1* (1943), 319 Ill. App. 370, 378.

Petitioners argue, however, that these cases are not dispositive because they were decided when detachment and annexation proceedings were conducted in a bifurcated manner. In the past, the regional board of the area subject to detachment conducted a hearing on the petition; the board considering annexation later voted—independently—on the basis of a transcript. (See Ill. Rev. Stat. 1987, ch. 122, par. 7—1 *et seq.*) In 1988, the legislature amended the School Code to provide for joint hear-

ings. (Pub. Act 85—260, eff. Jan. 1, 1988.) Petitioners maintain that this change evidences the legislature's intent to alter the meaning of "concurrent action."

We begin our analysis with an examination of the statutory language, which is the best indication of legislative intent. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) As amended, section 7—2 refers to "concurrent action" and "joint hearing." Section 7—6 mentions "joint hearing" and "joint order." Nowhere does the School Code expressly provide for a "joint vote." Nevertheless, petitioners argue that the words "meet together," "joint order" and "a decision" in section 7—6 imply a single vote, with the results tabulated together.

If "each regional board" is to render a decision, however, two decisions necessarily result. Moreover, had the legislature intended to equate "concurrent" and "joint," it would not have used two different words. When the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended. (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 100.) Further, this court presumes that the legislature knew of the prior interpretation placed on its language by judicial decision. (*Illinois Power Co. v. City of Jacksonville* (1960), 18 Ill. 2d 618, 622.) Where terms used in a statute have acquired a settled meaning through judicial construction and are retained in subsequent amendments, they are to be understood as previously interpreted by the courts unless the legislature clearly indicates a contrary intention. *People ex rel. Nelson v. Wiersema State Bank* (1935), 361 Ill. 75, 78-79.

This court has recognized a difference between "concurrent" and "joint" action by school trustees for nearly a century. In the absence of statutory change, we may assume that the legislature has no quarrel with our in-

terpretation of these terms. (See *Republic Steel Corp. v. Industrial Comm'n* (1962), 26 Ill. 2d 32, 46-47.) If the legislature had been dissatisfied with our prior interpretation of "concurrent action," it could have effected a change in the law by amending the statute. (*People v. Singleton* (1984), 103 Ill. 2d 339, 343-44.) We will not, under the guise of "statutory construction," read into the statute a substantive change the legislature did not see fit to make. *People v. Hare* (1988), 119 Ill. 2d 441, 447.

Our interpretation of the statute is strengthened by a closer look at section 7—6, which requires the superintendent to deny the petition if the boards fail to enter a joint order. As the appellate court observed, this provision would be meaningless if the legislature intended the boards to vote together. (203 Ill. App. 3d at 803.) Petitioners argue that this language describes the procedure to be taken in case of a tie vote. This construction, however, ignores the fact that a tie would result in a denial of the petition, thereby rendering any decision by the regional superintendent superfluous. Moreover, under the petitioners' view, when detachment and annexation is sought from one region to two or more regions, annexing regions could pool their votes, guaranteeing approval of the petition and leaving the detaching region with no voice in the matter.

Thus, we are not persuaded that anything in section 7—6 implicitly alters the requirements of "concurrent action" in section 7—2. We therefore hold that the regional school boards did not err in voting separately and rendering independent decisions on the petition. Their actions, as well as the regional superintendent's denial of the petition after the divided vote, complied with the procedural requirements of the School Code.

Petitioners next argue that the decision of the regional boards was contrary to the manifest weight of the

evidence presented at the joint hearing. In support of this argument, they maintain that the trial judge, in affirming the administrative decision, improperly considered *de minimis* financial losses to the school district subject to the proposed detachment. Petitioners also contend that the appellate court erroneously required them to show benefit to the annexing district in order to prevail.

Under the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 7—7), courts are to review the boards' decision in accordance with the provisions of the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*). The scope of review extends to all questions of law and fact presented by the record, but the factual findings of the administrative agency are held to be *prima facie* true and correct. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110.) This rule, however, does not relieve a court of its duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact. *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 195.

Section 7—6 of the School Code provides that the regional boards:

"shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted ***." Ill. Rev. Stat. 1989, ch. 122, par. 7—6.

Based on the language of section 7—6, this court has held that petitions for detachment and annexation should be granted only where the overall benefit to the annexing district and the detachment area clearly outweighs the resulting detriment to the losing district and the surrounding community as a whole. (*Oakdale*, 12 Ill. 2d at 193-94; *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 400-01.) In applying this benefit-detriment test, regional boards, and the courts reviewing their decisions, are to consider differences between school facilities and curricula, the distances from the petitioners' homes to the respective schools, the effect detachment would have on the ability of either district to meet State standards of recognition, and the impact of the proposed boundary change on the tax revenues of both districts. (*Bowman v. County Board of School Trustees* (1974), 16 Ill. App. 3d 1082, 1085.) They also may consider the "whole child" and "community of interest" factors: the identification of the petitioning territory with the district to which annexation is sought, and the corresponding likelihood of participation in school and extracurricular activities. (*Golf*, 89 Ill. 2d at 397-98.) Although the personal desires of the petitioning parents may be taken into account, more than personal preference is needed to support a change in school district boundaries. *Golf*, 89 Ill. 2d at 400; *Oakdale*, 12 Ill. 2d at 193.

Petitioners argue that the trial judge erred when he found that they had failed to clearly show the financial loss to the losing district was *de minimis*. Loss of revenue is not a determinative factor in detachment proceedings; this circumstance alone will not prevent a boundary change if the district subject to detachment is not levying the maximum tax rate. (*Golf*, 89 Ill. 2d at 401.) Whether a detaching district will remain financially

healthy and able to meet the statutory standards for recognition is more important than the size of the loss of tax revenues and assessed valuation. (*Golf*, 89 Ill. 2d at 401.) Nevertheless, financial loss to the detaching district is not irrelevant. The statute itself dictates that the regional boards are to consider "the division of funds and assets which will result from the change of boundaries." (Ill. Rev. Stat. 1989, ch. 122, par. 7–6.) To be a valid basis denying a detachment petition, however, the resulting depletion of tax revenues must be a serious one. *Bowman*, 16 Ill. App. 3d at 1086 (finding a depletion of less than one-half of 1% of the losing district's assessed valuation to be *de minimis*); *cf. Oakdale*, 12 Ill. 2d at 192-93 (granting of petition reversed where detachment would have reduced the assessed valuations of the losing districts by up to 20%).

The Carver and Barth properties together make up less than one-half of 1% of Mulberry Grove's assessed valuation. The trial judge simply stated the obvious when he observed that the record "appears to support the proposition that any detachment, however small, would in effect cause some depletion of the tax resources and other State Aid Revenue of Mulberry Grove Community Unit No. 1." In every such proceeding there is a resulting loss of assessed valuation and tax revenue to the losing district. (*Golf*, 89 Ill. 2d at 401.) When ruling that the administrative decision was not against the manifest weight of the evidence, the trial judge reasoned that the petitioners had "failed to show that any special benefits could be received by the individuals involved sufficient to justify the detachment action." The appellate court, concluding that "the detachment would not affect the district's ability to meet statutory standards of recognition," merely noted that the Mulberry Grove district would lose between $1,300 and $1,500 in property tax revenues if the petition were granted. (203 Ill. App. 3d

at 807.) Thus, we are not persuaded that the trial judge's order or the appellate court's opinion turned on a consideration of *de minimis* financial losses.

Petitioners also argue that the appellate court's ruling, contrary to the standards established in *Oakdale* and *Golf*, required them to show benefit to the annexing district in order to prevail. Petitioners seeking a change in school district boundaries need not show benefit to the annexing district independent of benefit to the detachment area. (*Golf*, 89 Ill. 2d at 400.) "Instead, it is the *overall* benefit to the annexing district and the detachment area considered *together*" that must outweigh the resulting detriment to the losing district and the surrounding community as a whole. (Emphasis in original.) (*Golf*, 89 Ill. 2d at 400-01.) We therefore agree with petitioners that, in the absence of substantial detriment to either school district, some benefit to the educational welfare of the students in the detachment area is sufficient to justify the granting of a petition for detachment and annexation. (*Board of Education of Jonesboro Community Consolidated School District No. 43 v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 233; *Board of Education, Community High School District No. 154 v. Regional Board of School Trustees* (1980), 84 Ill. App. 3d 501, 505.) Mere absence of substantial detriment to either district, however, is not sufficient to support a petition for detachment and annexation. School district boundaries are not to be changed by reason of shopping, banking or school preferences, but must be "designed with an eye to the educational welfare of the children residing in all the territory to be affected." *Oakdale*, 12 Ill. 2d at 193-94.

Nothing in the appellate court opinion is inconsistent with these considerations. The appellate court, citing *Oakdale*, correctly observed that it is the welfare of the students and the school districts as a whole, rather than

the wishes of a few, that must control decisions concerning detachment and annexation. (203 Ill. App. 3d at 807.) The opinion merely requires petitioners to show benefit to the detachment area, apart from the satisfaction of personal desires.

We do not believe petitioners in this case have met their burden of showing benefit either to the annexing district or to the educational welfare of the students in the detachment area. Petitioners have shown only that the school districts would suffer no substantial detriment as a result of the proposed boundary change. They did not present evidence of any recognizable benefit to the annexing district if their petition were granted. Neither have petitioners shown that a boundary change would work an improvement in the educational welfare of the students in the area subject to detachment.

Benefit to the students' educational welfare can mean an improvement in academic programs. (See, *e.g., Davis v. Regional Board of School Trustees of Madison County, Worden Unit School District No. 16* (1987), 155 Ill. App. 3d 185 (detachment granted where annexing school district offered a superior curriculum).) "Educational welfare," however, has been broadly interpreted. In *McHenry County*, for example, a family with only one school-age child, a nationally ranked tennis player, sought to have their property detached from one school district and annexed to another. The appellate court, in affirming the boundary change, found the student's educational welfare would be improved because the annexing district offered a competitive tennis program while the detaching district did not. (*McHenry County*, 84 Ill. App. 3d at 503.) When the educational programs of the respective school districts are equivalent, courts have granted petitions for detachment and annexation where the annexing school district had more modern classrooms and better maintained facilities. (See, *e.g., Bow-*

*man,* 16 Ill. App. 3d at 1087.) Boundary changes also have been allowed because of shorter distances from the petitioners' homes to the annexing school (*Bowman,* 16 Ill. App. 3d at 1087; *Jonesboro,* 86 Ill. App. 3d at 233-34), and where students' identification with their "natural community center" would increase participation in school and extracurricular activities (*Golf,* 89 Ill. 2d at 400; *Bowman,* 16 Ill. App. 3d at 1087-88; *Jonesboro,* 86 Ill. App. 3d at 233-34).

In contrast, the appellate court in *Board of Education of Carrier Mills-Stonefort Community Unit School District No. 2 v. Regional Board of School Trustees* (1987), 160 Ill. App. 3d 59, reversed a decision granting a change in school boundaries where the evidence primarily demonstrated the petitioners' personal desire to associate with the annexing district. The court noted that neither petitioning parent demonstrated any familiarity with the curricula of the affected schools, and that the distance from their home to the annexing school was actually farther than to the school from which detachment was sought. (*Carrier Mills,* 160 Ill. App. 3d at 64.) Similarly, the court in *Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 554, found that denial of a petition for detachment and annexation was supported by evidence that the district from which detachment was sought was closest to the petitioners' home. The court found no evidence that the affected territory would naturally have closer ties with the annexing district, but only that petitioners continued to do business and maintain social relationships in the community where they previously lived. *Eble,* 52 Ill. App. 3d at 553.

The facts of this case are indistinguishable from those in *Eble* and *Carrier Mills.* The record indicates that the distance from the petitioners' homes to schools in the Mulberry Grove District is only about 12 miles. The distance to the Carlyle School District, to which they wish

to annex their property, is 17 to 18 miles. Although there was testimony that the Carvers and Barths "identify more" with Keyesport, which is in the Carlyle district, there is no evidence that their children have ties to that area or that this in any way facilitates the students' involvement in school or extracurricular activities. Unlike the petitioners in *Davis*, petitioners here conceded that Mulberry Grove and Carlyle offer comparable educational programs. Likewise, in contrast to the evidence presented in *Bowman*, there was no testimony that Carlyle's facilities are superior to those at Mulberry Grove. In fact, petitioners have emphasized throughout this process that they do not believe one school district is "better" than the other.

The Carvers and Barths were experiencing behavioral problems with their children. The Barths' daughter began to skip school and her grades deteriorated during her sophomore year. She had been suspended from Mulberry Grove High School for truancy and disciplinary problems. The Barths were not critical of the educational environment at Mulberry Grove, and testified that their daughter's problems at school stemmed from drug addiction. Although her academic performance improved somewhat after the transfer to Carlyle, she was disciplined for truancy on one occasion and spent the last three weeks of the school year in a residential drug rehabilitation facility.

The Carvers' son became "aggressive" and "generally uncooperative" in his kindergarten class at Mulberry Grove. His teacher sent the Carvers several notes about his behavior, but they never discussed these problems with her. At the hearing, Mrs. Carver expressed concern about the teacher's disciplinary tactics; she apparently believed the teacher was too strict. When the Carvers' son began wetting his bed and expressing reluctance to go to school, Mrs. Carver took him to a physician. She

also consulted with the principal at Mulberry Grove, who suggested that the boy be tested for learning disabilities. Instead, the Carvers transferred their son to Carlyle, where he was enrolled in an "At Risk" program. Mulberry Grove does not offer such a program, which provides for a full-time remedial teacher and a teacher's aide in the classroom. The Mulberry Grove principal, however, testified that if it had been determined that the boy had a learning disability, the school district offered a special education program that could have met his needs.

No doubt these parents thought it was in the best interests of their children to transfer them to Carlyle. As commendable as their motives were, however, there is no objective evidence in the record that this was in fact the case. Because the Carvers did not have their son tested for learning disabilities before transferring him to Carlyle, we cannot know whether he would have benefitted from the special education program at Mulberry Grove. The Barths acknowledge that their decision to send their daughter to Carlyle was an effort to keep her from quitting school and to avoid her possible expulsion from Mulberry Grove. In sum, petitioners, for various personal reasons, wanted their children to attend Carlyle. We agree with the appellate court that the "only significant gain which would result were the petition granted would be to petitioners," i.e., to the parents of the students living in the area sought to be detached. (203 Ill. App. 3d at 807.) Thus, we believe the regional boards could reasonably conclude that the record in this case is insufficient to support the granting of the petition.

"The judiciary is ill equipped to act as a super school board in assaying the complex factors involved in determining the best interest of the schools and the pupils affected by a change in boundaries." (*School Directors of School District No. 82 v. Wolever* (1962), 26 Ill. 2d 264,

267.) When the record indicates the boards have considered the applicable statutory factors and their decision is supported by substantial evidence, the decision must be affirmed. (*Golf*, 89 Ill. 2d at 396-97; *Eble*, 52 Ill. App. 3d at 554.) In this case, we find that the regional boards complied with the statutory requirements, and that their decision, as contained in the regional superintendent's order, is supported by substantial evidence. We are therefore unable to say that the decision to deny the petition was contrary to the manifest weight of the evidence.

Accordingly, we affirm the judgment of the appellate court.

*Judgment affirmed.*