# Illinois Official Reports

## Appellate Court

---

### *Shephard v. Regional Board of School Trustees of De Kalb County*, 2018 IL App (2d) 170407

---

| | |
|---|---|
| Appellate Court Caption | CHARLES SHEPHARD, LYNN SHEPHARD, LAVERNE DAVIS, ALICE DAVIS, SHARON JOHNSON, HEIDI JOHNSON, RONALD MACY, THERESA MACY, C. NICHOLAS CRONAUER, AUDRA CRONAUER, LINNAE SMITH, and DAWN STYKA, Plaintiffs-Appellants, v. THE REGIONAL BOARD OF SCHOOL TRUSTEES OF DE KALB COUNTY, DE KALB COMMUNITY UNIT SCHOOL DISTRICT NO. 428, and SYCAMORE COMMUNITY UNIT SCHOOL DISTRICT NO. 427, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-17-0407 |
| Filed | March 28, 2018 |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 16-MR-425; the Hon. Bradley J. Waller, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Burns, Cronauer & Brown, LLP, of Sycamore (Charles E. Cronauer, of counsel), for appellants.<br><br>Hinshaw & Culbertson LLP, of Chicago (Joshua G. Vincent, Carson R. Griffis, and Yashekia T. Simpkins, of counsel), for appellee De Kalb Community Unit School District No. 428. |

Robbins Schwartz Nicholas Lifton & Taylor, Ltd., of Chicago (Heidi A. Katz and Jorge F. Rovelo, of counsel), for appellee Sycamore Community Unit School District No. 427.

Richard D. Amato, State's Attorney, of Sycamore (Sarah J. Gallagher Chami, Assistant State's Attorney, of counsel), for other appellee.

Panel    JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Hudson and Justice Spence concurred in the judgment and opinion.

## OPINION

¶ 1    The plaintiffs, Charles Shephard (Shephard), Lynn Shephard, Laverne Davis, Alice Davis, Sharon Johnson, Heidi Johnson, Ronald Macy, Theresa Macy, C. Nicholas Cronauer (Cronauer), Audra Cronauer, Linnae Smith, and Dawn Styka, petitioned the Regional Board of School Trustees of De Kalb County (the Board) to detach their properties from the boundaries of De Kalb Community Unit School District No. 428 (the De Kalb District) and annex them into the boundaries of Sycamore Community Unit School District No. 427 (the Sycamore District). After a hearing, the Board denied the plaintiffs' petition. On administrative review, the circuit court of De Kalb County affirmed the Board's decision. The plaintiffs appeal from that order. We affirm.

¶ 2                              BACKGROUND
¶ 3    On April 29, 2016, the plaintiffs filed a petition with the Board, seeking to detach their properties from the De Kalb District and annex it to the Sycamore District. On October 2, 2016, the Board conducted a hearing on the petition.

¶ 4    At the hearing, the plaintiffs and the De Kalb District stipulated that the plaintiffs lived within 10 miles of both the De Kalb District and the Sycamore District. The plaintiffs acknowledged that both districts have equally competent curricula. Eight of the twelve plaintiffs submitted written statements summarizing their contacts with the city of Sycamore. The written statements focused generally on how the plaintiffs identified themselves as residents of Sycamore rather than residents of the city of De Kalb or the town of Cortland—they listed the recreational activities, public services, and business activities in which they participated in Sycamore.

¶ 5    Cronauer's written statement referenced an incident in January 2014 when students and faculty at Cortland Elementary School (Cortland Elementary), which is in the De Kalb District, were hospitalized "after toxic fumes (carbon monoxide) drifted from [a nearby] landfill and entered [the school's] ventilation system." Cronauer added that the landfill's capacity had increased from 300 tons of waste per day to 800 tons of waste per day as of

January 2015. Cronauer asserted that the "chance of future harm to our children from the toxic fumes is significant."

¶ 6        Cronauer attached to his written statement newspaper articles about the incident. According to an article in the Daily Chronicle, a contractor for Waste Management, the landfill operator, "hit a pocket of old decomposing garbage" while performing maintenance work, "releasing the odor, but no methane gas, into the air." James Briscoe, the De Kalb District's superintendent, said that "wind carried the odor to the school less than a mile to the northeast." The Daily Chronicle reported that 63 students and staff of Cortland Elementary were treated with oxygen for "minor carbon monoxide exposure."

¶ 7        The article further reported that Waste Management stated that any future work would be performed "only when favorable conditions exist or the school is not in session as we complete this construction project." Waste Management also stated that, as of January 14, 2014, it hoped "to have this project completed in the next weeks *** based on favorable conditions."

¶ 8        The only plaintiffs to testify at the hearing were Shephard and Cronauer. Shephard said that he was familiar with the landfill incident at Cortland Elementary. He stated that he could smell the landfill when he drove by it. He acknowledged that he was not aware of any efforts to monitor emissions from the landfill by either Waste Management or Cortland Elementary. He also testified that, because De Kalb County had increased the amount of waste that Waste Management could bring to the landfill, there would be an additional 100 trucks driving to the landfill every day. He also noted that Cortland Elementary is located on Route 38, which means that traffic traveling 55 miles per hour passes the school.

¶ 9        Cronauer testified that he believed that children would benefit from going to the same school as other members of their community. He also believed that the "rural roads" around Cortland Elementary were not safe and that school buses going to and from the school have to turn onto a road with a speed limit of 55 miles per hour. He also stated that just because Waste Management or Cortland Elementary monitored emissions from the landfill, "that doesn't mean it's going to prevent another accident from happening again."

¶ 10        On behalf of the De Kalb District, Jennie Heuber, the De Kalb District's director of curriculum and instruction, and Andrea Gorla, the De Kalb District's assistant superintendent, testified. Heuber testified that the De Kalb District's curriculum met the standards of the School Code (105 ILCS 5/1-1 et seq. (West 2016)) and the Illinois State Board of Education. She stated that there were no meaningful distinctions between the De Kalb District's curriculum and the Sycamore District's curriculum. Heuber explained that all students in the De Kalb District enjoyed the benefit of "the 'curriculum tech initiative,' " through which all students in grades 3 through 12 received Chromebook laptops. She further noted that in all of its facilities the De Kalb District used "instructional coaches" who work with teachers to make "sure that best practices are in place" in the classrooms. She believed that the De Kalb District met the students' needs.

¶ 11        Gorla testified that, with respect to the landfill incident, meters had been installed in Cortland Elementary to monitor the air quality. Members of the school's staff were trained on how to respond if a monitor triggered an alarm. Since the monitors had been installed, there had been no negative readings.

¶ 12        At the close of the hearing, the Board denied the detachment petition. The Board explained that "based on the evidence presented *** there is no significant direct educational benefit to the [plaintiffs'] children if the change in boundaries were allowed."

¶ 13    On December 5, 2016, the plaintiffs filed a complaint in the trial court for administrative review of the Board's decision. On May 12, 2017, following a hearing, the trial court denied the plaintiffs any relief. The trial court found that all of the relevant evidence had been presented to the Board and that there was no indication that the Board had ignored any of it. The trial court therefore determined that the Board's decision was not against the manifest weight of the evidence. Following the trial court's ruling, the plaintiffs filed a timely notice of appeal.

¶ 14                                                          ANALYSIS

¶ 15    On appeal, the plaintiffs argue that the Board erred in denying their petition for detachment. The plaintiffs insist that the Board's finding that there would be no significant direct educational benefit to the plaintiffs' children if the petition were granted was against the manifest weight of the evidence.

¶ 16    A regional board's decision to grant or deny a petition to detach and annex pursuant to section 7-6 of the School Code (*id.* § 7-6) is an administrative decision for purposes of the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)). 105 ILCS 5/7-7 (West 2016). As such, we review the ruling of the Board, "not the judgment of the circuit court." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010). The scope of our review of an administrative agency's decision extends to all questions of law and fact. *Merchant v. Regional Board of School Trustees*, 2014 IL App (2d) 131277, ¶ 71. An agency's factual findings are held to be *prima facie* true and correct. *Id.*; see 735 ILCS 5/3-110 (West 2016). However, this rule does not relieve us of our duties to examine the record and to set aside an order that is unsupported by the evidence. *Merchant*, 2014 IL App (2d) 131277, ¶ 71. Reversal of an agency's factual findings is warranted only when they were against the manifest weight of the evidence; that is, when it is clearly evident that the agency should have reached the opposite conclusion. *Board of Education of Marquardt School District No. 15 v. Regional Board of School Trustees*, 2012 IL App (2d) 110360, ¶ 20. Where administrative orders involve mixed questions of law and fact, we apply the "clearly erroneous" standard of review. *Id.* We review *de novo* an agency's decisions on questions of law. *Id.*

¶ 17    At the outset, we note that the legislature has recently amended the School Code as it pertains to school district boundary changes. The plaintiffs acknowledge that the law has changed, but they argue that the Board and the reviewing courts are still required to consider the same factors used by courts prior to those amendments. Prior to 2016, section 7-6(i) of the School Code provided that, at a hearing on a petition for detachment and annexation, the regional board of school trustees

> "shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted." 105 ILCS 5/7-6(i) (West 2014).

¶ 18    Courts found that, under section 7-6(i) of the School Code, the regional board was required to perform a "benefit/detriment test." In applying this test, the regional board was required to consider the following factors: (1) the differences between school facilities and curricula, (2)

the distances from the petitioners' homes to the respective schools, (3) the effect detachment would have on the ability of either district to meet the state's standards of recognition, (4) the impact the proposed boundary change would have on the tax revenues of both districts, and (5) whether the detaching district would remain financially healthy and able to meet state standards of recognition. *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees*, 146 Ill. 2d 347, 356 (1992); *Dukett v. Regional Board of School Trustees*, 342 Ill. App. 3d 635, 641 (2003). The mere absence of a substantial detriment to either district was not sufficient to support a petition for detachment and annexation. *Carver*, 146 Ill. 2d at 358. However, petitioners did not need to demonstrate a particular benefit to the annexing district as long as the overall benefit to the annexing district and the detachment area considered together outweighed the resulting detriment to the detaching district and the surrounding community as a whole. *Id.* (citing *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees*, 89 Ill. 2d 392, 400-01 (1982)). In the absence of a substantial detriment to either district, some benefit to the educational welfare of the students in the detachment area was sufficient to warrant granting a petition for detachment. *Id.*

¶ 19 Our supreme court offered some guidance regarding the balancing test and the relevant factors. The loss of revenue was not a determinative factor in detachment proceedings and alone would not prevent a boundary change if the district subject to detachment was not levying at the maximum tax rate. *Id.* at 356-57. Although financial loss to the detaching district was not irrelevant, it could not serve as the basis for a denial of detachment unless it was serious. *Id.* at 357.

¶ 20 Further, "educational welfare" should be broadly interpreted. *Id.* at 359. Students' educational welfare was bettered not just through improved educational programs or facilities. *Id.* at 359-60. Improvement could also occur by way of a shortened distance between students' homes and their school. *Id.*; see *Pochopien v. Regional Board of School Trustees of the Lake County Educational Service Region*, 322 Ill. App. 3d 185, 194 (2001) (citing examples of educational welfare).

¶ 21 In addition to the factors set forth above, courts were allowed to consider the " 'whole child' " and " 'community of interest' " factors. *Carver*, 146 Ill. 2d at 356. Those factors examined the identification of the detachment area with the district to which annexation was sought and the corresponding likelihood of participation in school and extracurricular activities. *Id.*

¶ 22 Effective January 1, 2016, the legislature amended section 7-6(i) of the School Code. That section provides in pertinent part:

"The regional board of school trustees *** shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and the effect detachment will have on those needs and conditions and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is in the best interests of the schools of the area and the direct educational welfare of the pupils that such change in boundaries be granted ***. ***

***

(2) The community of interest of the petitioners and their children and the effect detachment will have on the whole child may be considered only if the regional board

of school trustees *** first determines that there would be a significant direct educational benefit to the petitioners' children if the change in boundaries were allowed." 105 ILCS 5/7-6(i) (West 2016).

¶ 23 In comparing the prior version of the law with the 2016 version, a stark difference is readily apparent: whereas the prior version (as interpreted by our supreme court) allowed the regional board (and ultimately the reviewing court) to consider multiple factors simultaneously in determining whether a detachment petition should be granted, the 2016 version requires the regional board to first determine that there would be a significant direct educational benefit to the petitioners' children if the petition were granted. *Id.* Absent such a finding, the regional board is not to consider other factors, such as the community-of-interest and whole-child factors. *Id.* § 7-6(i)(2).

¶ 24 Here, the plaintiffs stipulated that the De Kalb District and the Sycamore District had comparable educational programs. The plaintiffs did not raise any concern about the educational facilities in the De Kalb District. The only concern that the plaintiffs raised that possibly implicated a significant direct educational benefit was that the children would be safer by not attending a school close to a landfill. The evidence that the plaintiffs presented on this issue, however, was less than compelling.

¶ 25 The plaintiffs submitted a January 2014 newspaper article that described how 63 students and staff had suffered minor carbon monoxide exposure when a contractor at the nearby landfill had "hit a pocket of old decomposing garbage" that released an odor. Following that incident, Waste Management indicated that the contractor's work would continue only when conditions were favorable or school was not in session. Gorla testified that, following that incident, meters had been installed in Cortland Elementary to monitor the air quality and members of the school's staff had been trained how to respond if those monitors triggered an alarm. Since the monitors had been installed, there had been no negative air-quality readings. The plaintiffs also presented evidence that the capacity of the landfill had been increased and that, as a result, more trucks would be driving past Cortland Elementary on their way to the landfill.

¶ 26 Based on this evidence, the Board found that the plaintiffs had not established that there would be a significant direct educational benefit to the plaintiffs' children if the change in boundaries were allowed. The Board's decision was not against the manifest weight of the evidence. The evidence suggests that the landfill incident was an isolated event not likely to reoccur, as Waste Management had taken remedial steps to prevent such an incident from happening again. Further, if such an incident were to reoccur, Cortland Elementary had trained members of its staff how to respond, thereby minimizing the risk that the children would become sick. As such, reversing the Board's decision would require us to determine that the plaintiffs had established that there would be a significant direct educational benefit to their children in not being exposed to a slight health risk that was unlikely to reoccur. That we cannot do.

¶ 27 The plaintiffs also suggest that their children's health is at risk because of the high volume of trucks passing the school to get to the landfill. One of the plaintiffs noted that the speed limit on the road by the school is 55 miles per hour. However, per the defendants' request, we take judicial notice that vehicles passing the school on school days when children are present may drive only 20 miles per hour. See Cortland Town Code § 6-1-2(A)(2) (adopted Feb. 13, 1995); *Lopez v. Fitzgerald*, 53 Ill. App. 3d 164, 169 (1977) ("It is well established in Illinois and a

sound judicial policy for the courts in reviewing a case to take judicial notice of any and all statutes and ordinances which pertain to the case."). We also note that the plaintiffs did not present evidence of the traffic conditions around the elementary school in the Sycamore District. Even if we were to assume that the traffic conditions are better in the Sycamore District, we cannot say that the plaintiffs' children would enjoy a significant direct educational benefit if they went to a school with less traffic going by. Accordingly, the Board's decision to deny the plaintiffs' petition for detachment was not against the manifest weight of the evidence.

¶ 28    In so ruling, we note that the plaintiffs argue that the Board's finding was improper because it did not make specific findings in denying their petition. In discussing the prior version of the School Code, we rejected this same argument in *Dresner v. Regional Board of School Trustees*, 150 Ill. App. 3d 765, 775 (1986). We explained that courts are reluctant

> "to reverse and remand decisions of regional school boards in detachment and annexation petitions for failing to enter extensive findings of fact because only a single issue is presented to the board, that being whether it is the best interests of the schools in the area and educational welfare of the students [citation], making a detailed and extensive finding of fact unnecessary." *Id.* at 780.

We then observed that the case involved only one question for the regional school board to decide and that much of the evidence was not in dispute. *Id.* We found that, although the board had not made detailed findings, its findings were nonetheless "sufficient to allow an orderly review by the circuit court, and this court, based upon the petition, pleadings, and transcripts." *Id.* at 780-81. We therefore concluded that "[t]o remand this cause to the regional school boards for a formal issuance of extensive written findings would be 'a useless act which would extol form over substance.' " *Id.* at 781 (quoting *Board of Education of Community Unit School District No. 300 v. County Board of School Trustees*, 60 Ill. App. 3d 415, 419 (1978)).

¶ 29    Here, nothing in the current School Code suggests that it requires the Board to make more explicit findings than were required under the prior version of the School Code. As in *Dresner*, the Board was confronted with a single issue: whether the plaintiffs' children would experience a significant direct educational benefit if the petition were granted. The Board found, based on the evidence presented, that they would not. The Board's findings were sufficient for this court to review. See *Morgan v. Department of Financial & Professional Regulation*, 388 Ill. App. 3d 633, 655 (2009) (an agency is not required to make a finding on each evidentiary claim, and its findings need be only specific enough to permit an intelligent review of its decision).

¶ 30    The plaintiffs' reliance on *Merchant*, 2014 IL App (2d) 131277, ¶¶ 62-64, is misplaced. In that case, in considering the prior version of the School Code, this court reversed the regional board's decision after determining that the regional board had not addressed many factors that weighed in favor of detachment, such as the petitioners' school preferences, the shorter commutes to school, and the impact on property values. *Id.* ¶¶ 98, 115, 117. Here, however, the record does not indicate that the Board overlooked any evidence favorable to the plaintiffs regarding the threshold question—whether there would be a significant direct educational benefit if the petition were granted.

¶ 31    We also find without merit the plaintiffs' contention that, under section 7-2.6 of the School Code (105 ILCS 5/7-2.6 (West 2016)), the Board was required, but failed, to consider the "will of the people" in denying the plaintiffs' petition. That section pertains to "[a] petition for

annexation to or detachment of territory from a special charter school district." *Id.* § 7-2.4. This case has nothing to do with a special charter school district.

¶ 32 The plaintiffs insist that other cases, such as *Wirth v. Green*, 96 Ill. App. 3d 89, 91-92 (1981), considered the "will of the people of the area affected," even if detachment from a special charter school district was not at issue. *Wirth* relied heavily on this court's decision in *Burnidge v. County Board of School Trustees*, 25 Ill. App. 2d 503, 511-12 (1960), where we stated:

> " 'All things being equal, the landowner, the taxes from whose property enables the school of the district to operate, the parents and students residing in the district, should be permitted to choose the school the pupils should attend.' "

*Burnidge* involved the interpretation of an earlier version of the School Code that is not applicable to the case at bar. Thus, neither *Burnidge* nor *Wirth* requires us to reach a different result.

¶ 33 As the Board's finding that there would not be a significant direct educational benefit to the plaintiffs' children if the change in boundaries were allowed was not against the manifest weight of the evidence, we need not consider the community-of-interest and the whole-child factors. 105 ILCS 5/7-6(i)(2) (West 2016).

¶ 34                                    CONCLUSION
¶ 35 For the reasons stated, the judgment of the circuit court of De Kalb County is affirmed.

¶ 36 Affirmed.