2021 IL App (3d) 200306

Opinion filed May 14, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| JOHN R. BURLE and AMY SUE BURLE, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiffs-Appellants, | ) | Marshall County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| REGIONAL BOARD OF SCHOOL | ) | |
| TRUSTEES OF EDUCATION NO.35 | ) | |
| LA SALLE, MARSHALL & PUTNAM | ) | |
| COUNTIES; RICHARD BAZYN, in His | ) | |
| Official Capacity; JOHN GLASCOCK, in His | ) | Appeal No.    3-20-0306 |
| Official Capacity; VICKY GARRISON, in Her | ) | Circuit No.    19-MR-15 |
| Official Capacity; LARRY WALKER, in His | ) | |
| Official Capacity; DAVE HAGENBUCH, in | ) | |
| His Official Capacity; KATHY RENO, in Her | ) | |
| Official Capacity; LLOYD VOGEL, in His | ) | |
| Official Capacity; LOWPOINT WASHBURN | ) | |
| COMMUNITY UNIT SCHOOL DISTRICT | ) | |
| NO. 21; and MIDLAND COMMUNITY | ) | |
| SCHOOL DISTRICT NO. 7, | ) | Honorable |
| | ) | Bruce Phillip Fehrenbacher, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Lytton and Schmidt concurred in the judgment and opinion.

_____

**OPINION**

¶ 1     The plaintiffs, John R. and Amy Sue Burle, appeal from a circuit court order upholding on

administrative review a decision of the defendant, the Regional Board of School Trustees of

Education No. 35, La Salle, Marshall, & Putnam Counties (Regional Board), denying the Burles'

petition to detach territory from one school district and annex it to another school district pursuant

to section 7-6 of the School Code (105 ILCS 5/7-6  (West 2018)).

¶ 2                                                    I. BACKGROUND

¶ 3         The Burles, along with three other landowners not relevant to this appeal, filed a petition

on March 12, 2018, with the Regional Board, seeking to detach territory from the defendant,

Midland Community School District No.7 (Midland School District), and to annex the territory to

the defendant, Lowpoint Washburn Community Unit School District No. 21 (Lowpoint Washburn

School District). Midland School District opposed the petition, while Lowpoint Washburn School

District supported the petition.

¶ 4         A hearing on the Burles' petition was held before the Regional Board on July 12, 2018. A

report prepared by Chris Dvorak, the Regional Superintendent of Schools, indicated that the

subject territory consisted of six parcels of land in Marshall County, within the boundaries of the

Midland School District but contiguous to the Lowpoint Washburn School District. The tax

amount to the Midland School District from the six parcels of land was $2790.17. The territory

included 217 acres of agricultural land and the Burles' single-family home. Amy Burle testified

that she and her husband, John, purchased the subject property from Amy's family in October

2015 and built a house on the property. Prior to building the house, the Burles moved to the area

in July 2015 and lived temporarily with Amy's mother. Amy testified that their two oldest children

had attended school in Loami, Illinois, prior to the move. Upon moving to the area, Amy and her

husband enrolled them in school in the Midland School District, since that was the district where

their home was to be located. The two oldest children attended first and third grade in the Midland

School District for four days in the fall of 2015. Amy testified that she received a telephone call

from the principal of the elementary school in the Midland School District, who informed Amy that since Amy's mother's home was located in the Lowpoint Washburn School District, and the home on the Burles' property was being torn down and rebuilt, the children could not attend the Midland School District without paying tuition. Amy did not speak to anyone else in the Midland School District about the attendance policy; rather, the Burles immediately enrolled the two older children in the Lowpoint Washburn School District.

¶ 5     Amy testified that, at the time of the hearing in July 2018, all four of their children attended school in the Lowpoint Washburn School District, and the children had just completed fifth grade, third grade, first grade, and kindergarten. Amy identified her children's individual report cards and testified that they were doing well in school. Amy testified that the children were dropped off at her mother's home in the morning on school days and her mother was responsible for getting the children on the bus in the morning and off the bus in the afternoon. The Burles would pick up the children from Amy's mother's house after work. According to Amy, if the children attended Midland School District schools, the children would be left unsupervised at home before and after school. Amy testified that she attended Lowpoint Washburn School District schools. The Burles had a number of friends in the Lowpoint Washburn School District, many who helped out with the children. Amy testified that the Burles did not have any friends in the Midland School District with whom they regularly socialized.

¶ 6     Amy testified that, at the children's current school in the Lowpoint Washburn School District, she and John chaperoned field trips when they could and participated in reading and movie nights at the school. John is the basketball coach for the fourth and fifth grade boys. The three boys participate in recreational baseball, and John is the assistant baseball coach. Amy was not sure of the requirements to play recreational ball and if attending school in the Midland School District

3

would affect that. All four children use the Washburn library, but that was a public library that they could continue to use.

¶ 7    The superintendent of the Lowpoint Washburn School District, Duane Schupp, testified that students who are moved around have more difficulty adapting, maybe not academically but definitely socially and/or emotionally. Schupp noted the additional work that staff often has to undertake to bring up to speed educationally the students who transfer in. According to Schupp, due to differences in what subjects are emphasized by different school districts, and the order in which topics are taught, students who move school districts could be hindered academically and potentially could take four to six months to catch up. However, Schupp testified that both the Lowpoint Washburn and Midland School Districts were good school districts, and he could not say that better students, like the Burle children, were more likely to have an educational detriment if switched to another school district. Schupp testified that it was best socially and emotionally for the Burle children to stay in the Lowpoint Washburn School District. Schupp testified that the Lowpoint Washburn School District had a higher percentage of low-income students than the Midland School District and the Burle children leaving the district would cause the percentage to go up slightly.

¶ 8    Bill Wrenn, the superintendent of the Midland School District, testified as to the administrative policies and curriculum of the Midland School District. He testified that he did not have data to support a four to six month academic delay in transfer students, but he had observed difficulties with students who moved frequently. Wrenn reiterated Schupp's opinion that there was the potential for a gap or disruption in learning when switching schools, due to differences in curriculums. Wrenn testified that his staff was trained and capable of addressing any curriculum gap and that the school district had programs that, at least in part, countered the negative effects

4

on academics from students changing schools. Wrenn answered "yes" to the question of whether those programs were trying to correct a "direct significant educational detriment." Wrenn opined that students coming into Midland School District would receive an educational benefit.

¶ 9 The Regional Board voted to deny the petition, relying on its finding that a significant direct educational benefit to the Burles' children was not proven, so the Regional Board was unable to consider the Burles' community of interest or the effect of detachment on the whole child. The Burles' petition for rehearing was denied and they filed a complaint for administrative review in La Salle County circuit court. The matter was transferred to the Marshall County circuit court. The circuit court found that there was evidence in the record supporting the Regional Board's decision, concluded that decision was not clearly erroneous, and upheld the Regional Board's decision. The Burles appealed.

¶ 10                                   II. ANALYSIS

¶ 11 The Burles argue that the Regional Board erred in concluding that they had to show a significant direct educational benefit for their petition to be granted. The Burles acknowledge that section 7-6 of the School Code was amended in 2016 but contend that evidence of a "significant direct education benefit" is only necessary before consideration of community-of-interest or whole-child factors. They recognize that the overall standard is to consider the direct educational welfare of the students. The Burles also acknowledge that the sole reported case analyzing the effect of the amendment, *Shephard v. Regional Board of School Trustees of De Kalb County*, 2018 IL App (2d) 170407, seems to conclude that the amendment requires a regional board to first determine that there would be a significant direct educational benefit to the plaintiffs' children. Absent such a finding, the regional board is not to consider other factors, such as the community-of-interest and whole-child factors. *Id.* ¶ 23. The Burles argue that this case was wrongly decided

5

and that the Regional Board could consider all factors, although it could only consider community of interest and the whole child if a significant direct educational benefit was shown first. The Burles contend that the continuation of the educational experience was a significant direct educational benefit to the Burle children, so the Regional Board could consider the other factors. However, even if it were not such a benefit, the Burles assert that continuation of the educational experience was a factor to consider in the direct educational welfare of their children.

¶ 12        Midland School District and the Regional Board argue that we should uphold the Regional Board's decision, contending that the Burles' primary evidence revolved around the whole child and community-of-interest factors, while the amended statute dictated that those could not be considered without a showing of significant direct educational benefit, which the Burles did not show.

¶ 13        A regional board's decision on a petition pursuant to section 7-6 of the School Code (105 ILCS 5/7-6 (West 2018)) is an administrative decision for purposes of the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)). Thus, we review the ruling of the board rather than the judgment of the circuit court. *Shephard*, 2018 IL App (2d) 170407, ¶ 16. Findings of fact by a regional board will not be set aside on administrative review unless they are shown to be contrary to the manifest weight of the evidence. *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees of Cook County*, 89 Ill. 2d 392, 396 (1982). We apply a clearly erroneous standard of review to mixed questions of law and fact, and we review *de novo* any questions of law. *Shephard*, 2018 IL App (2d) 170407, ¶ 16. The petitioners must prove their case by a preponderance of the evidence. See 5 ILCS 100/10-15 (West 2018). " 'A *prima facie* case is established by evidence that would enable the trier of fact to find each element of the cause of action more probably true than not' ." *Merchant v. Regional Board of School Trustees*, 2014 IL

6

App (2d) 131277, ¶ 70 (quoting *Board of Education of Marquardt School District No. 15 v. Regional Board of Trustees*, 2012 IL App (2d) 110360, ¶ 19).

¶ 14    Section 7-6 of the School Code provides that, in deciding whether to permit a transfer of territory from one school district to another, the regional board "shall determine whether it is in the best interests of the schools of the area and the direct educational welfare of the pupils that such change in boundaries be granted." 105 ILCS 5/7-6 (West 2018). Petitions for detachment and annexation should only be granted "where the overall benefit to the annexing district and the detachment area clearly outweighs the resulting detriment to the losing district and the surrounding community as a whole." *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees*, 146 Ill. 2d 347, 356 (1992). *Carver* was decided under the law as it existed prior to the 2016 amendment. Under *Carver*, regional boards were to apply this benefit-detriment test by considering "differences between school facilities and curricula, the distances from the petitioners' homes to the respective schools, the effect detachment would have on the ability of either district to meet State standards of recognition, and the impact of the proposed boundary change on the tax revenues of both districts." *Id.* The regional boards could also consider the "whole child" and "community of interest" factors. *Id.* Those factors are closely related and "recognize[ ] that extracurricular participation in social, religious and even commercial activities is important in a child's development as a beneficial supplement to the child's academic involvement" and that " 'an identification with a school district in a child's natural community center will inevitably result in increased participation in school activities by the child and his parents.' " *Board of Education of Golf School District No. 67*, 89 Ill. 2d at 397-98 (quoting *Burnidge v. County Board of School Trustees*, 25 Ill. App. 2d 503, 509 (1960)).

¶ 15    The amended section 7-6(i) provides:

7

"The regional board of school trustees shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and the effect detachment will have on those needs and conditions and as to the ability of the detaching or dissolving and annexing school districts to meet the standards of recognition as prescribed by the State Board of Education, shall take into consideration the division of funds and assets that will result from the change of boundaries, and shall determine whether it is in the best interests of the schools of the area and the direct educational welfare of the pupils that such change in boundaries be granted. *** In the instance of a change of boundaries through detachment:

(1) When considering the effect the detachment will have on the direct educational welfare of the pupils, the regional board of school trustees shall consider a comparison of the school report cards for the schools of the detaching and annexing districts and the school district report cards for the detaching and annexing districts only if there is no more than a 3% difference in the minority, low-income, and English learner student populations of the relevant schools of the districts.

(2) The community of interest of the petitioners and their children and the effect detachment will have on the whole child may be considered only if the regional board of school trustees first determines that there would be a significant direct educational benefit to the petitioners' children if the change in boundaries were allowed.

(3) When petitioners cite an annexing district attendance center or centers in the petition or during testimony, the regional board of school trustees may consider the difference in the distances from the detaching area to the current attendance centers and the cited annexing district attendance centers only if the difference is no less than 10

8

miles shorter to one of the cited annexing district attendance centers than it is to the corresponding current attendance center.

(4) The regional board of school trustees may not grant a petition if doing so will increase the percentage of minority or low-income students or English learners by more than 3% at the attendance center where students in the detaching territory currently attend, provided that if the percentage of any one of those groups also decreases at that attendance center, the regional board may grant the petition upon consideration of other factors under this Section and this Article.

(5) The regional board of school trustees may not consider whether changing the boundaries will increase the property values of the petitioners' property." 105 ILCS 5/7-6(i)(1)-(5) (West 2018).

¶ 16    The 2016 amendment specified and limited some of the factors that should be considered by the regional board in applying *Carver*'s benefit-detriment test to determine if the petition to detach and annex should be granted. It also modified the standard for the benefit-detriment test to limit the consideration of the educational welfare of the pupils to that which is direct. See *id*. § 7-6(i) (West 2018); *Shephard*, 2018 IL App (2d) 170407, ¶ 23; 99th Gen. Assem., House Proceedings, May 30, 2015, at 85 (statements of Representative Sente) (the impetus for the bill was *Merchant*, 2014 IL App (2d) 131277, which held that property value increase was valid reason to detach from school district, so the bill created five criteria for detachment). For example, under *Carver*, regional boards could consider the distances from the petitioners' homes to the respective schools, but the amendment limits that consideration to situations where the distances are greater than 10 miles. See *Carver*, 146 Ill. 2d at 356; 105 ILCS 5/7-6(i)(3) (West 2018). Also, while regional boards can still consider the whole-child and community-of-interest factors, the

9

amendment limits that consideration to situations where the regional board first determines that there would be a significant direct educational benefit to the children. Thus, we agree with the Burles that the amendment to section 7-6 of the School Code did not modify *Carver*'s benefit-detriment test to require an overall significant direct educational benefit; it does, however, limit some of the factors and modify the test to limit consideration of the educational welfare of the students to that which is "direct." See 105 ILCS 5/7-6(i) (West 2018).

¶ 17　　　　The Second District's holding in *Shephard* does not necessarily conflict with this conclusion. The *Shephard* court specifically concluded, in line with the amendment, that it could not consider whole-child or community-of-interest factors because there was no showing of a significant direct educational benefit. See *Shephard*, 2018 IL App (2d) 170407, ¶¶ 23, 26; 105 ILCS 5/7-6(i)(2) (West 2018). While that court did not discuss educational welfare, the parties had stipulated that the students were located within 10 miles of both school districts and the school districts had equally competent curricula. It is possible that the parties had stipulated that the only evidence offered in favor of the annexation related to whole-child or community-of-interest factors. If that is not the case, then we disagree with that aspect of *Shephard* and find that the factors delineated in the statute are not exhaustive and other factors can, and should, be considered in determining the direct educational welfare of students, including such factors as convenience to the parents and their children, continuity of education, and parental preference. *Dukett v. Regional Board of School Trustees*, 342 Ill. App. 3d 635, 642 (2003).

¶ 18　　　　In this case, the Burles primarily offered evidence of their community of interest and the effect detachment would have on the whole child. The Regional Board found that evidence could not be considered because the Burles failed to show a significant direct educational benefit to their children if the change in boundaries were allowed. The Burles argue that they did show a

10

significant direct educational benefit in that Wrenn, the superintendent of the Midland School District, answered affirmatively when asked if changing schools was a significant direct educational detriment. The Burles contend that establishes the converse—that avoiding a change of schools is a significant direct educational benefit. However, as the circuit court found, the evidence of any significant direct educational benefit caused by the move was equivocal at best. Schupp could not say whether there would be a significant direct educational benefit to allowing the Burle children to remain at the Lowpoint Washburn School District. Wrenn testified unequivocally that the Burle children would experience a benefit if they transferred to the Midland School District. Wrenn did not have any data to support a potential four-to-six-month delay in learning of transfer students; he observed difficulty with students who moved frequently and some gaps when the curriculums are different. His testimony regarding whether changing schools was a significant direct educational detriment was in the context of Midland School District's tiered intervention system, which was designed to correct missing skills, not only in students who have moved. We find that the Regional Board's conclusion that the evidence did not establish that continuity of education in this case was a significant direct educational benefit was a mixed question of law and fact that was not clearly erroneous. As such, the Regional Board correctly did not consider the evidence related to the community of interest and the whole child.

¶ 19        The Regional Board's task was to determine whether the Burles proved by a preponderance of the evidence that the overall benefit to the annexing district and the detachment area clearly outweighed the resulting detriment to the losing district and the surrounding community as a whole. The Regional Board concluded that the Burles did not meet that burden, relying primarily on the finding that most of the evidence offered by the Burles could not be considered because they failed to show a significant direct educational benefit. See *Board of Education of Community*

11

*Unit School District No. 337 v. Board of Education of Community Unit School District No. 338*, 269 Ill. App. 3d 1020, 1026 (1995) (a regional board need not make extensive findings of fact in detachment and annexation proceedings, only sufficient findings to permit adequate judicial review). Although we agree that other factors can enter the educational welfare analysis, such as continuity of education and parental preference, we find that the Regional Board was not clearly erroneous in concluding that the Burles did not prove that those factors affecting their children's direct educational welfare clearly outweighed the detriment to the losing district and the community as a whole. As noted above, the evidence that the continuity of the education of the Burles' children would benefit their direct educational welfare was equivocal, and, in fact, there was evidence that they might benefit educationally from a transfer to the Midland School District. Thus, we uphold the Regional Board's denial of the petition and affirm the judgment of the circuit court.

¶ 20                                  III. CONCLUSION

¶ 21          The judgment of the circuit court of Marshall County is affirmed.

¶ 22          Affirmed.

**No. 3-20-0306**

| | |
|---|---|
| **Cite as:** | *Burle v. Regional Board of School Trustees of Education No. 35 LaSalle, Marshall & Putnam Counties*, 2021 IL App (3d) 200306 |
| **Decision Under Review:** | Appeal from the Circuit Court of Marshall County, No. 19-MR-15; the Hon. Bruce Phillip Fehrenbacher, Judge, presiding. |
| **Attorneys for Appellant:** | J. Brian Heller, of J. Brian Heller, PC, of Washington, for appellants. |
| **Attorneys for Appellee:** | Todd L. Martin, LaSalle County State's Attorney, of Ottawa, for appellees Regional Board of School Trustees of Education #35 LaSalle, Marshall & Putnam Counties, Richard Bazyn, John Glascock, Vicky Garrison, Larry Walker, Dave Hagenbuch, Kathy Reno, and Lloyd Vogel.<br><br>Brian R. Bare, of Whitt Law LLC, of Aurora, for appellee Midland Community School District No. 7.<br><br>No brief filed for other appellee. |